**R. H. OSWALD CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10177.**

United States Court of Appeals Seventh Circuit.

Heard Oct. 17, 1950.

Decided Nov. 10, 1950.

Rehearing Denied Dec. 15, 1950.

Before MAJOR, Chief Judge, and DUF-FY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This petition is for review of a decision of the Tax Court of the United States, entered on January 10, 1950. The controversy relates to the compensation paid by petitioner to R. H. Oswald, its president and general manager, for the taxable years of 1943 and 1944, and deducted by petitioner in its income tax returns for those years as ordinary and necessary expenses under Sec. 23(a) (1) of the Revenue Act of 1942, 26 U.S.C.A. § 23(a) (1).

Petitioner's position is aptly stated in its petition filed with the Tax Court, as follows: "Petitioner deducted as ordinary and necessary business expenses under Section 23(a) (1) of the Internal Revenue Code the compensation of $45,767.83 and $48,503.12, which was paid to Oswald in the fiscal years 1943 and 1944, respectively. The respondent allowed only $9,600.00 for each of said years, representing the regular salary, and disallowed the balance of said compensation paid to Oswald, on the theory that the amount disallowed was unreasonable within the meaning of said section. Petitioner avers that the total compensation, including regular salary and additional compensation, paid to Oswald during the fiscal years 1943 and 1944, respectively, was reasonable; and that it was deductible as ordinary and necessary business expenses for said respective years under Section 23(a) (1) of the Internal Revenue Code."

Thus, the respondent allowed petitioner $9,600.00 for each of the taxable years as deductible items and proposed deficiencies in petitioner's income tax upon the difference between the amounts thus allowed and the amounts claimed and deducted by petitioner for the respective years. The Tax Court found reasonable compensation for such service to be $22,500.00 for the taxable year 1943, and $25,000.00 for the year 1944, and in the decision now under review determined deficiencies accordingly.

Walter E. Barton, Washington, D. C., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Morton K. Rothschild, S. Walter Shine, Sp. Asst. to Atty. Gen., for respondent.

Numerous points are raised and discussed by petitioner, all of which are embraced in the primary issue which petitioner present-

ed to the Tax Court, that is, whether the amounts paid to Oswald as compensation for the taxable years were properly deducted by petitioner in its income tax returns for those years.

Petitioner is a corporation organized under the laws of the State of Indiana, with its principal office at Evansville in that State. It was organized on July 17, 1922 as the Oswald-Sparrenberger Company and operated under that name until June 30, 1943, when its name was changed to R. H. Oswald Company, Inc. Its capital stock since the date of organization has been $30,000.00, consisting of 300 shares of the par value of $100.00 per share. From July 31, 1929 until November 13, 1937, one-half of the stock was owned by R. H. Oswald and one-half by Henry W. Sparrenberger. On November 13, 1937, all of the capital stock was acquired and since has been held and owned by the Oswald family, 290 shares by Oswald, 5 shares by his wife and 5 shares by a brother. Prior to that time, Oswald and Sparrenberger were officers of the corporation and engaged in its active operation and management. Subsequent thereto, Oswald had sole control and performed all the services relating to the operation and management of the business. Petitioner has paid no cash dividends on the stock since the fiscal year ending June 30, 1932.

Petitioner has been engaged in the wholesale fruit and vegetable business since its organization. In 1938, it added wholesale groceries, which now constitutes about 20% of its total business. During the taxable years petitioner had about 1300 customers, consisting of retail grocers, hotels, restaurants, hospitals and institutions. Its territory includes Evansville and surrounding towns within a radius of approximately 100 miles. During those years it maintained twenty trucks, had eighteen salesmen, fifty-five warehousemen and truck drivers, and an office force of twelve employees.

That Oswald's services to petitioner were of an extraordinary character is hardly open to question. It is asserted that during the taxable years he rendered services which ordinarily might be expected of two or three men, and, in fact, services which had previously been performed by him and Sparrenberger. We see no reason, however, to make a detailed statement of the services rendered by Oswald. They are not in dispute. Furthermore, the Tax Court was aware of the valuable character of such services. In its opinion it stated, "Petitioner's evidence, however, establishes that Oswald's services in the taxable years, warranted compensation in excess of the amounts allowed by the respondent. His industry, long hours, and heavy responsibilities, the volume of petitioner's business and the net earnings attest to this." And that the Tax Court recognized the quality and character of his services is evidenced by the fact that it increased the compensation allowable therefor from $9,600.00, determined by the respondent for each year, to $22,500.00 for 1943 and to $25,000.00 for 1944.

The sole testimony offered by the petitioner in support of the reasonableness of the deductions claimed was that of the witness Abramson, who testified as an expert witness and who, in response to a hypothetical question, expressed the opinion that the value of such services to petitioner was not less than $50,000.00 in 1943, and not less than $60,000.00 to $65,000.00 in 1944. The witness also expressed the same opinion based upon the testimony of Oswald which he had heard in open court. Abramson was secretary of a produce reporting company, which is a credit reporting agency of the wholesale fruit and produce trade. While he had had no experience in the actual conduct and management of such a business, he was, so he testified, familiar with the salaries paid to executives and general managers in this line of business.

Petitioner contends that the Tax Court was obligated to accept the opinion of this expert witness as to the reasonableness of the compensation allowed to Oswald, particularly in the absence of any other testimony relating thereto. We have examined cases cited by petitioner in support of this contention and think they furnish little, if any, aid as applied to the cir-

cumstances here presented. In fact, we know of no reason why the opinion of an expert such as offered in the instant case may not in the discretion of the trier of the facts be rejected, even though there is no other evidence on the subject. In Dayton Power & Light Co. v. Public Utilities Commission of Ohio, 292 U.S. 290, 299, 54 S.Ct. 647, 652, 78 L.Ed. 1267, the court stated, "But plainly opinions thus offered, even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them. This is true of opinion evidence generally, whether addressed to a jury * * * or to a judge * * *, or to a statutory board".

█ Petitioner urges there was error in striking the testimony of the expert witness that in reviewing financial reports of various produce companies he had found that salaries of officers averaged from two and one-half to three percent of the total sales volume. The court ruled this evidence to be hearsay. Certainly this was not the best evidence of the facts sought to be proved and we agree that it was not admissible. In this connection it is pertinent to note that Sec. 29.23(a)-6 of Treasury Regulation 111, provides among other things, "that reasonable compensation is only such amount as would ordinarily be paid for like services or like enterprises under like circumstances," and it may also be observed that petitioner did not offer a scintilla of evidence as to what would be reasonable compensation as defined in this regulation.

Petitioner also relies upon the policy of its board of directors, beginning in 1930 and extending beyond the taxable years 1943 and 1944, of basing the compensation of its officers upon a small salary plus a percentage of earnings, which it is argued raised a presumption that the compensation paid to Oswald during the taxable years was reasonable in the absence of any evidence to the contrary. We shall only refer to the resolution relevant to the taxable years with the observation that similar resolutions had been adopted on a number of previous occasions. On August 4, 1943, the following resolution was adopted: "Re-

solved, that the salary of R. H. Oswald, President of the R. H. Oswald Company, Inc., of Evansville, Indiana, be $800.00 (Eight hundred dollars) per month; and as additional compensation, while the net worth of the company exceeds $75,000.00 (Seventy-five thousand dollars) then all additional gross earnings above 80% (Eighty per cent) on the par value of the outstanding capital stock, would be used as additional Salary Compensation for R. H. Oswald, and remain until changed by the Board of Directors."

A similar resolution was adopted August 2, 1944. In discussing such resolutions the Tax Court in part stated: "After November 13, 1937, Oswald owned 290 shares out of the 300 and his wife and brother each owned 5 shares. He then controlled the corporation, and was for all practical purposes the sole distributee of the earnings whether labeled dividends or compensation. The subsequent resolutions, as shown in our findings, providing for a salary which included a share of the profits did not represent a free bargain between the corporation and Oswald to secure his services on terms advantageous to the corporation. The arrangement siphoned off earnings that would otherwise be available as dividends or capital surplus. It can be given but little, if any, weight in determining what is reasonable compensation."

█ Petitioner cites cases where the incentive or contingent plan for compensating officers or employees of a corporation has been approved even though such plan results in a compensation greater than otherwise would have been paid. J. D. Van Hooser & Co. v. Glenn, Collector of Internal Revenue, D.C., 50 F.Supp. 279; Austin et al. v. United States, 5 Cir., 28 F.2d 677, 678; William S. Gray & Co. v. United States, 35 F.2d 968, 974, 69 Ct.Cl. 480; Mayson Mfg. Co. v. Commissioner of Internal Revenue, 6 Cir., 178 F.2d 115, 120. It does not follow, however, that such a plan must be accepted in all cases. In our view, the reasoning of the Tax Court is logical and it was within its province to reject the plan under the circumstances presented. More than that, Oswald was

paid for his services for the years 1939 to 1942, inclusive, $7,200.00, or less than one-sixth of the amounts paid during the taxable years of 1943 and 1944. True, there was a sharp increase in petitioner's net sales for the taxable years, particularly in 1944, but even so, the amounts of such sales were only double those of 1942, when Oswald was paid $7,200.00.

■ We have noticed other points suggested by petitioner in support of its contention that the compensation paid to Oswald for the years in question was reasonable and, therefore, properly deductible, and find them without merit. The burden was upon petitioner to establish the affirmative of the issues which it presented to the Tax Court. Fox River Paper Corp. v. United States, 8 Cir., 165 F.2d 639, 641; Beck v. Commissioner, 7 Cir, 179 F.2d 688, 689 (and cases therein cited). That court decided such issue against petitioner and we are not in a position to hold that there was no rational basis for its decision in this respect.

The Tax Court having rejected, as we think it was justified in doing, petitioner's contention that the amounts paid by it to Oswald during the taxable years—that is, $45,767.83 for the year 1943, and $48,503.-12 for the year 1944—as reasonable compensation, naturally raises the inquiry as to the basis employed for the amounts which it found to be reasonable—that is, $22,500.-00 for 1943, and $25,000.00 for 1944. We find no evidentiary basis for an allowance of these particular amounts. The Tax Court, as shown, concluded that petitioner had failed to establish that it was entitled to the amounts which it allowed and paid, but evidently thought that petitioner had shown that it was entitled to more than the $9,600.00 for each year, allowed by respondent.

■ In the state of the record we see no good reason for allowing the petition for review and sending the matter back to the Tax Court for a redetermination. Respondent has filed no cross-appeal and makes no contention that the amounts allowed by the Tax Court are excessive. And, of course, the petitioner makes no

such contention. Petitioner having attempted and failed to show that the allowances should have been greater, that is, the amounts allowed and paid by it to Oswald, is in no position to complain of allowances which were substantially two and one-half times as much as had been determined by the Commissioner.

The petition for review is denied and the order of the Tax Court is

Affirmed