## Appeal of QUADRIGA MANUFACTURING CO.

Docket No. 2814.   Submitted May 12, 1925.   Decided October 30, 1925.

1. Where an account receivable is merely written down by a creditor to equalize the estimated value of the assets of the debtor, the amount written off is not deductible by the creditor as a bad debt.

2. Where error in the computation of a deficiency is apparent on the face of the statement attached to a deficiency letter, the Board will take cognizance of the error and direct the proper determination of the deficiency.

*B. B. Pettus, Wilton H. Wallace,* and *W. H. Eckert, Esqs.,* for the taxpayer.
*A. H. Murray, Esq.,* for the Commissioner.

Before Ivins,[1] Marquette, and Morris.

This appeal is from the determination of deficiencies in income and proofits taxes for the years 1919 and 1920 in the aggregate amount of $4,829.23.   The question raised relates to the deductibility of alleged bad debts for each of the years 1919 and 1920.

FINDINGS OF FACT.

The taxpayer is an Illinois corporation, with its principal office in Chicago, engaged in the business of manufacturing machinery parts for other concerns.

Prior to 1919 the taxpayer had a contract with the Chicago Laundry Machinery Co. under which it manufactured for and delivered to the latter certain parts of laundry machinery.   It manufactured a large quantity of parts, in advance, in order to keep the Chicago Laundry Machinery Co. adequately supplied to meet its demands as required, and on this account the latter was largely indebted to the taxpayer at the end of 1918.

During 1919, the Chicago Laundry Machinery Co. was found to be in financial difficulties and unable to continue business.   It then had assets amounting to $17,839.16, which it transferred to the taxpayer and, in addition, assigned to one of the officials of the tax-

---

[1] This decision was prepared by Mr. Ivins during his term of office.

payer the majority of the capital stock of the Chicago Laundry Machinery Co.

On December 31, 1919, the books of the taxpayer showed that the Chicago Laundry Machinery Co. was indebted to it in the sum of $22,884.29. The difference between that amount and the book value of the assets so transferred, namely $5,045.13, was charged off on the books of the taxpayer as a bad debt on December 31, 1919, but in its return for the year 1919 a deduction was made in the flat amount of $5,000.

During the year 1920, some of the assets were disposed of and additional small parts to complete machines were purchased by the taxpayer in order to make sales. The assets on hand belonging to the Chicago Laundry Machinery Co. were inventoried on December 31, 1920, in the amount of $23,128.51; and at the same date, the Chicago Laundry Machinery Co. was indebted to the taxpayer in the amount of $27,726.18. The difference between these amounts, namely $4,607.67, was charged off on the books of the taxpayer on December 31, 1920, as a bad debt, but in its return for the year 1920 a deduction was made in the flat amount of $5,000.

Similar facts existed in the year 1921, when the taxpayer charged off as a bad debt the amount of $2,000, representing the difference between the indebtedness of the Chicago Laundry Machinery Co. and the assets of that company held by the taxpayer on December 31, 1921.

In determining the deficiency of $380.31 for the year 1919, the Commissioner determined the net income in the following way:

| | | |
|---|---:|---:|
| Surplus at beginning | | $80,281.90 |
| Surplus at end | | 83,301.51 |
| Net increase in surplus | | 3,019.61 |
| Additions: | | |
| Life-insurance premiums | $1,575.25 | |
| Income tax 1917–18 | 767.74 | |
| Losses on Liberty bonds | 1,584.60 | |
| Dividends paid | 8,700.00 | |
| Bad debts | 5,000.00 | |
| Total additions | | 17,627.59 |
| Total net income | | 20,647.20 |

In determining the deficiency of $4,448.92 for the year 1920, the Commissioner determined the net income in the following way:

| | |
|---|---:|
| Surplus at beginning | $83,301.51 |
| Surplus at end | 94,900.95 |
| Net increase in surplus | 11,599.44 |

Additions:

| | |
|---|---|
| Life-insurance premiums | $981.00 |
| Income tax | 3,851.63 |
| Losses on bad debts | 5,000.00 |
| Dividends paid | 8,000.00 |
| Total additions | $17,832.63 |
| Total net income | 29,432.07 |

In ascertaining the taxpayer's invested capital for 1920, the Commissioner used as the surplus the same figure ($83,301.51) which was used as the closing surplus for 1919 prior to the additions made for items disallowed. The amount of $83,301.51 was not the correct surplus of the taxpayer on January 1, 1920, and both the net income and the invested capital for 1920 were erroneously computed. The true surplus as of January 1, 1920, was at least $88,301.51.

The Commissioner disallowed the deductions for each of the years 1919 and 1920 in the flat amounts of $5,000, respectively, and determined a deficiency in tax for the year 1919 in the amount of $380.31 and for 1920 in the amount of $4,448.92. Other disallowances set forth in the deficiency letter are not now in issue.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 7 days' notice, in accordance with Rule 50.

### OPINION.

IVINS: We are unable to find any error in the Commissioner's disallowance of the alleged bad debts upon the evidence submitted.

In the year 1919 the taxpayer claimed to have owned all of the assets of the Chicago Laundry Machinery Co., having a value of $17,839.16, which were offset by an account receivable amounting to $22,884.29. The fact that at the close of the year 1920 there were assets of $23,128.51, which reduced the liability of $27,726.18, suggests the conclusion that, after the 1919 charge-off, the taxpayer reconstructed on its books for 1920 both the 1919 assets and liabilities of the Chicago Laundry Machinery Co. and carried the same over into 1920, with a resulting increase in totals due to additional work which the taxpayer performed in connection with the parts for laundry machinery. The same conclusion would pertain to the year 1921.

If the foregoing is a statement of the true condition, then the taxpayer was not entitled to the deductions for bad debts as taken upon its returns. The evidence submitted supports no other conclusion, and accordingly the determination of the Commissioner in disallowing the bad debts deduction from income is approved.

However, it appears that there are errors in the computation of the 1920 deficiency as disclosed by the deficiency letter. The Commissioner determined the taxpayer's net income, for the purpose of arriving at the deficiency, by deducting from the book surplus at the end of the year the book surplus at the beginning of the year, and by adding to the result the various amounts disallowed as deductions from income. That procedure was followed in both 1919 and 1920. In using the surplus figure as of the beginning of 1920, the Commissioner erroneously applied the surplus at the end of 1919 as shown by the taxpayer's books without increasing that amount to the extent of the deductions properly disallowed as against income of 1919. It therefore appears that the January 1, 1920, surplus should be increased by the amount of the $5,000 bad debt deduction disallowed for 1919 and by the $1,584.60 losses on Liberty bonds, if the latter deduction evidenced an attempt to deduct an unrealized loss due to mere diminution in market value as distinguished from loss actually realized upon a sale. If it was an actual loss sustained by sale, the taxpayer would be entitled to the deduction of $1,584.60 from its 1919 income. The necessary adjustments should be made as to those items, in order to ascertain the net income and invested capital and as the basis for the determination of the proper deficiencies.